IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREEM ARMSTRONG,<br>        Plaintiff,<br><br>v.<br><br>U.M. SUESSER, et al.,<br>        Defendants. | C.A. No. 17-265 Erie<br><br>**District Judge Susan Paradise Baxter** |

## MEMORANDUM OPINION

### I.  INTRODUCTION

#### A.  Relevant Procedural History

Plaintiff Kareem Armstrong, an inmate incarcerated at the State Correctional Institution at Somerset, Pennsylvania ("SCI-Somerset"), initiated this civil rights action on October 4, 2017, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are three staff members at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), where Plaintiff was formerly incarcerated: Unit Manager Suesser ("Suesser"), Sgt. Delaney ("Delaney"), and C.O. Barber ("Barber"). Plaintiff subsequently filed an amended complaint on September 14, 2018 [ECF No. 21], which is now the operative pleading in this case.

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect him from being assaulted by another inmate, and by failing to intervene to stop the assault. As relief for his claims, Plaintiff seeks declaratory relief and monetary damages.

After the close of discovery, Plaintiff filed a motion for summary judgment on July 11,

2019 [ECF No. 42]¹, to which Defendants filed a response [ECF No. 49]. In addition, Defendants filed their own summary judgment motion [ECF No. 45], which was accompanied by a supporting brief that also acted as Defendants' opposition to Plaintiff's summary judgment motion [ECF No. 46]. Despite being granted ample time to respond to Defendants' motion, Plaintiff has failed to do so. This matter is now ripe for consideration.

### B. Relevant Factual History²

On July 10, 2017, while Plaintiff was walking back to his housing unit from lunch, Plaintiff had a verbal altercation with another inmate, "Myer," in the presence of an unnamed "zone officer." (ECF No. 21, Amended Complaint, at ¶¶ 10-13). After the altercation, the officer followed Plaintiff back to his housing unit and then informed Defendant Delaney that Plaintiff had words with another inmate; however, Plaintiff never told Defendant Delaney about the incident, nor did he tell him he was fearful for his safety. (ECF No. 48, at ¶¶ 8-9, 11). Defendant Barber was not present when the altercation occurred, nor did Plaintiff tell him about the incident or about any issues he had with inmate Myer. (Id. at ¶ 4).

Three days later, on July 13, 2017, after Plaintiff returned to his housing unit from the morning meal, he was attacked from behind by inmate Myer, who punched Plaintiff repeatedly in the head. (ECF No. 21, at ¶ 36). Plaintiff recalls getting up from the ground and running away

---

1
Plaintiff's motion is accompanied by Plaintiff's own declaration [ECF No. 43] and a purported statement of undisputed material facts [ECF No. 44]; however, both supporting documents are merely restatements of the allegations of his amended complaint. Thus, no response to these documents is required from Defendants.

2
The facts set forth herein have largely been gleaned from Defendants' concise statement of undisputed material facts [ECF No. 48], to which Plaintiff has failed to file a response. The Court has included only those facts that it has deemed undisputed based on the lack of adverse evidence in the record.

from Myer. (Id. at ¶ 37, 42). Defendant Delaney witnessed Myer chasing Plaintiff and notified the control room of an inmate assault, although he never saw a fight occur. (ECF No. 48, at ¶ 13; ECF No. 47-6, Extraordinary Occurrence Report, at p. 3). At the time, Defendant Barber was not present in the unit and did not see the assault because he had left to use the restroom. (ECF No. 48, at ¶¶13, 15). Upon returning to the unit, he also witnessed Myer chasing Plaintiff and ordered the inmates back to their cells. (ECF No. 47-6, at p. 3). After Plaintiff complied with his order and returned to his cell, Defendant Barber assisted with placing Myer in restraints. (ECF No. 48, at ¶ 15). A total of two minutes expired between the time the radio call was made to inform officers of the assault and the time the inmates were secured. (ECF No. 47-6, at p. 3).

## II. DISCUSSION

### A. Failure to Protect

The Eighth Amendment provides that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Williams v. Bledsoe, 2013 WL 5522848, at *18 (M.D. Pa. Oct. 3, 2013). See also Farmer v. Brennan 511 U.S. 825 (1994) (prison officials "must take reasonable measures to guarantee the safety of the inmates."). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer, 511 U.S. at 834. "Still not 'every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety.'" Bristian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), quoting Farmer, 511 U.S. at 834. To establish a failure to protect claim under the Eighth Amendment, a plaintiff must show that:

  1.  he was incarcerated under conditions posing a substantial risk of harm;

  2.  the official was deliberately indifferent to that substantial risk to his health and safety; and,

3

3. the official's deliberate indifference caused him harm.

Id.

To be deliberately indifferent, a prison official must both "know[ ] of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "This standard is subjective, not objective, 'meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.'" Carter v. Lawlor, 446 Fed. Appx. 420, 423 (3d. Cir. 2011), quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

### 1. Defendant Barber

Plaintiff has admitted that Defendant Barber was not present on the unit when his verbal altercation with inmate Myer occurred on July 10, 2017 (ECF No. 47-1, Plaintiff's deposition transcript, at p. 39). Plaintiff has also admitted that he never told Defendant Barber about the altercation. (Id.). In fact, Plaintiff testified that he simply assumed that Defendant Barber had heard about the incident: "I'm pretty sure [Defendant Barber] probably got it mentioned to him.... I don't know where he heard it from, I'm pretty sure he was aware" (Id.). It is evident from his own testimony that Plaintiff is unable to establish that Defendant Barber was actually aware of the existence of an excessive risk that Plaintiff would be assaulted by inmate Myer three days later. Thus, Defendant Barber cannot be found to have been deliberately indifferent to Plaintiff's safety, and summary judgment will be entered in his favor on Plaintiff's failure to protect claim.

### 2. Defendant Delaney

Defendant Delaney also was not present when Plaintiff's verbal altercation with inmate

Myer occurred on July 10, 2017. He was in the unit control bubble at the time and was told after the fact by the unnamed zone officer that Plaintiff "had words" with another inmate; however, Plaintiff never told Defendant Delaney that he was having problems with inmate Myer or that he feared for his safety. (ECF No. 47-1, at pp. 27-28). Plaintiff also never asked to be placed in administrative custody under self-lockup. (Id. at p. 30). In fact, Plaintiff admitted that he had no reason to believe that he was going to be attacked by inmate Myers on July 13, 2017, and that he was "completely caught off guard." (Id. at 46) As a result, Plaintiff is unable to establish that Defendant Delaney was actually aware of the existence of an excessive risk that Plaintiff would be attacked by inmate Myers on July 13, 2017. Summary judgment will be granted in favor of Defendant Delaney on Plaintiff's failure to protect claim.

### 3. **Defendant Suesser**

Defendant Suesser has disavowed any knowledge of Plaintiff's verbal altercation with inmate Myers. Indeed, he has stated that he was not made aware of the verbal altercation, nor was he informed by Plaintiff that inmate Myer had threatened him, or that he was having any problems with inmate Myer (ECF No. 47-2, at ¶¶ 8, 10-11; ECF No. 48, at ¶¶ 6- 7). These statements are contradicted by Plaintiff, who has testified that he told Defendant Suesser about the altercation on the day of the incident and asked to be moved to a different unit out of fear for his safety, noting that a physical altercation with inmate Myer was likely to occur (ECF No. 47-1, at pp. 29, 31). Plaintiff further testified that Defendant Suesser took no action to protect him from the assault that occurred on July 13, 2017. Thus, there are genuine issues of material fact as to whether Defendant Suesser knew of and disregarded the existence of an excessive risk to Plaintiff's safety. Summary judgment is inappropriate as to Plaintiff's failure to protect claim against Defendant Suesser.

### B. Failure to Intervene.

Plaintiff alleges that all Defendants violated his Eighth Amendment rights by failing to intervene to stop the assault of Plaintiff by inmate Myer on July 13, 2017.

The Third Circuit Court has held that "a corrections officer's failure to intervene can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). Defendants argue that Plaintiff has failed to prove that they had a reasonable opportunity to intervene. The Court agrees.

#### 1. Defendant Suesser

There is no evidence of record indicating that Defendant Suesser was present on the unit to witness the assault or was in a position from where he could intervene. Therefore, summary judgment will be granted in his favor on Plaintiff's failure to intervene claim.

#### 2. Defendant Barber

It is undisputed that Defendant Barber was not present on the unit at the time of the assault, because he had gone to the restroom. By the time he got back to the unit, Defendant Barber only saw inmate Myer chasing Plaintiff, at which time he ordered both inmates to return to their cells. Plaintiff has acknowledged that "being as though he didn't see what was going on, he – he couldn't really do nothing but send us to our cells." (ECF No. 47-1, at p. 49). When inmate Myer continued chasing Plaintiff, Defendant Barber intervened and restrained Myer against a wall while another officer handcuffed him. (ECF No. 47-6, at p. 3). Since he had no earlier opportunity to intervene, Defendant Barber's actions were reasonable and appropriate. Thus, summary judgment will be granted in his favor as to Plaintiff's failure to intervene claim.

### 3. **Defendant Delaney**

Defendant Delaney was in the unit control bubble at the time of the assault (ECF No. 47-1, at p. 52). He never saw the fight occur, but upon witnessing inmate Myer chasing Plaintiff, he radioed the officers on the unit that an inmate assault was in progress ((ECF No. 48, at ¶ 13; ECF No. 47-6, at p. 3). Within two minutes after the radio call went out, both Plaintiff and inmate Myer were secured (ECF No. 47-6, at p. 3). Thus, Defendant Delaney took reasonable and effective measures to intervene, and summary judgment will be entered in his favor on Plaintiff's failure to intervene claim, accordingly.

An appropriate Order follows.